

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Peter C. Andresen | * | Case No. | 01-25370-TJC |
| | * | Chapter | 7 |
| Debtor | * | | |
| ************************************ | * | | |
| Gary A. Rosen, Trustee | * | | |
| | * | | |
| | * | | |
| Plaintiff | * | | |
| vs. | * | | |
| Peter C. Andresen | * | Adv. No. | 06-01753 |
| | * | | |
| | * | | |
| Defendant. | * | | |

**MEMORANDUM OPINION GRANTING MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Before the Court is the Motion for Temporary Restraining Order and Request for

Preliminary Injunction (the "Motion") (Docket No. 2) filed by Gary A. Rosen, Chapter 7 Trustee

for the estate of Peter C. Andresen (the "Debtor"). The Court conducted an evidentiary hearing

on the Motion on October 26, 2006 and entered an oral order at the hearing, memorialized by a

written order entered on October 27, 2006, temporarily restraining the Debtor from taking any

actions to disrupt a sale of property of the estate previously approved by this Court, pending issuance of this written Memorandum and accompanying order.

The Court finds that the Debtor has willfully sought to interfere with the administration of this case by recording a lis pendens on real estate that the Court has previously determined is property of the estate and that is the subject of a sale contract that has been approved by the Court. The Debtor has taken this action even though he has no interest in the Property and no hope of recovery from this bankruptcy estate. The Court further finds that the Debtor has abused the bankruptcy process and is acting in bad faith, and will likely continue to do so. Therefore, for these reasons and for the reasons stated hereafter, the Motion will be granted.

## FINDINGS OF FACTS

The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 28, 2001. By order dated November 27, 2002, the case was converted to one under chapter 7. On March 4, 2003, Gary Rosen was appointed the chapter 7 Trustee ("Mr. Rosen" or the "Trustee") and he has administered the estate since that time.

**1.      Findings Relative to the Sale Motion.**

The instant dispute is part of the Trustee's ongoing effort to sell the real property and improvements at 824 Stockton Avenue, Cape May, New Jersey 08204 (the "Property"). On July 21, 2005, the Trustee filed a Motion Seeking Order Authorizing Sale of Real Property Free and Clear of Liens, Encumbrances and Interests (the "Motion to Authorize"). Docket No. 273. In the Motion to Authorize, the Trustee sought authority to list and sell the Property, subject to approval of the Court of any executed sale contract.[1] The Court granted the

---

[1] While the Motion to Authorize was in fact styled as a motion to sell, the Court, in the Authorization Order, stated that the Trustee, at a hearing held on September 19, 2005, clarified his intent that he only was seeking the authority to list the Property for sale as property of the estate.

2

Motion to Authorize, and entered the Order Authorizing Trustee to List Real Property for Sale as Requested in Motion (the "Authorization Order") on September 22, 2005. Docket No. 304. In the Authorization Order, this Court found and concluded that the Property was property of the estate and that the Trustee was authorized to list and sell the Property, but any proposed sale would be subject to further order of the Court.

In ruling on the Motion to Authorize, the Court addressed and resolved the Debtor's claims that (1) the Property was owned by Avalon Associates, an alleged New Jersey Partnership, and therefore was not property of the estate; and (2) that the Trustee failed to give notice of the proposed sale to the partners of Avalon Associates. In rejecting these claims, the Court ruled that Avalon Associates was merely the alter ego of the Debtor and not a valid and existing partnership. Docket No. 304. The Authorization Order was never stayed, and the Debtor's appeal of the Authorization Order was dismissed on September 27, 2006. Docket No. 344.

In accordance with the Authorization Order, and as specifically found by this Court after the evidentiary hearing on the Sale Motion described below, the Trustee retained a highly qualified, experience broker to sell the Property. The broker actively and aggressively marketed the Property, including advertising the Property for sale on a weekly basis. That marketing process occurred for almost one year. The broker and Trustee entertained a number of offers for the Property. The Trustee entered into a contract for the sale of the Property with a prospective buyer, subject to approval by this Court.

In order to effectuate the sale, the Trustee filed the Motion to Sell Property of the Estate Free and Clear of Liens and Other Interests (the "Sale Motion"). Docket No. 336. The Court conducted a lengthy hearing on the Sale Motion on September 25, 2006. At the conclusion of

the hearing, the Court issued an extensive bench ruling and granted the Sale Motion. In the bench ruling, the Court found and concluded that (1) the contract proposed by the Trustee was made at arm's length with a good faith purchaser; (2) the Property was fully and properly marketed; (3) the proposed sale price was the fair value for the Property; and (4) the proposed sale was in the best interest of the estate and comported with the requirements of 11 U.S.C. §363.[2]

On October 6, 2006, the Court entered the Order Granting Motion to Sell Property of Estate Free and Clear of Liens and Other Interests (the "Sale Order"). Docket No. 345. In the Sale Order, the Court authorized the Trustee, to sell the Property to the prospective buyer in accordance with the proposed contract. The Debtor filed a Motion to Alter or Amend the Sale Order, Docket No. 349, which this Court denied by order dated October 24, 2006. Docket No. 354.

**2.     Findings Relative to the Debtor's Filing of the Lis Pendens and Its Intended Effect**.

As stated above, on September 25, 2006, this Court issued its bench ruling granting the Sale Motion, thereby authorizing the sale of the Property. On September 28, 2006, the Debtor filed a Notice of Lis Pendens (the "Lis Pendens") in the public land records of Cape May, New Jersey, where the Property is located. The Lis Pendens states that:

> Notice is hereby given of pendancy of an action to appeal a certain order of the U.S. Bankruptcy Court of the Southern District of Maryland to the U.S. District Court of Maryland, Southern Division. The case titled: Peter C. Andresen-vs-Gary Rosen, Trustee, and the Case Number is PJM 05-3164. A successful prosecution of this appeal would cause a reversion of title.

---

[2] In ruling on the Sale Motion the Court gave the Debtor every opportunity to prosecute his objection to the sale, and specifically addressed the fourteen points of objection to the sale that were raised by the Debtor in his Objections to the Notice of Private Sale and Motions for Appointment of Private Counsel, Stay of Proceedings or Continuance. Docket No. 339.

The Debtor stated he filed the Lis Pendens because he "hoped it would stop the sale" of the Property that had been authorized by the Court.  He testified that he believed he "would not be able to get a stay" of the Sale Order in the Bankruptcy Court or the United States District Court for the District of Maryland.

The appeal to which the Lis Pendens refers is case number PJM 05-3164, and is an appeal of, among other orders, the Authorization Order entered by the Bankruptcy Court.  The appeal was dismissed by order of the United States District Court entered September 27, 2006, the day before the Debtor filed the Lis Pendens.  The Debtor has not filed any notice stating that the appeal has been dismissed.

The Debtor's filing of the Lis Pendens has had its intended effect.  The Trustee has been unable to obtain title insurance for the Property.  As a result, the prospective buyer will only go forward with the sale at a considerably reduced price.

The Debtor testified that he does not know if he will take any other actions to disrupt the sale of the Property.

**3.     Findings Relative to Debtor's Lack of Any Interest in the Property and the Bankruptcy Estate**.

Under no scenario concerning the administration of the bankruptcy estate will the Debtor receive any distribution.  This finding was established by the direct testimony of the Trustee, who has administered this case for three and one-half years and evidenced a solid understanding of the assets and liabilities of this estate.  This finding was equally established by the Debtor himself who candidly stated "There is nothing [in this case] for me. And probably nothing for the unsecured creditors."[3]

---

[3] After the Court questioned why the Debtor had standing to object to the Sale Motion when both he and the Trustee conceded the Debtor has no chance of recovery in this case, the Debtor, as is his custom, attempted to retract his

The Debtor has no interest in the Property. The Property is property of the estate, as has previously been determined by this Court. See supra, Findings of Fact, Section 1. That finding is the law of the case, and the Debtor's appeal of that finding has been dismissed. Id. The Debtor stated that he has appealed that dismissal to the United States Court of Appeals for the Fourth Circuit.

The Debtor contends he has a small ownership interest in Avalon Associates. He contends in his appeal to the Fourth Circuit that the Property is really owned by Avalon Associates, a contention, as explained above, that also previously was rejected by the Bankruptcy Court. Id. If -- as this Court finds is unlikely -- the Debtor is successful in his appeal to the Fourth Circuit and establishes that the Property is owned by Avalon Associates, the Debtor's alleged ownership interest in Avalon Associates itself would be property of the estate, subject to administration by the Trustee. Accordingly, in no event has the Debtor articulated any basis upon which a court could find that the Debtor has a direct or indirect interest in the Property that is not property of the estate.

**4.    Findings Relative to Debtor's Abuse of the Bankruptcy Process and Lack of Veracity.**

**a.    The Penn Bank Action**

In February, 1999, the Debtor, individually and on behalf of Avalon Associates, executed a promissory note in the amount of $250,000 from the predecessor-in-interest to First Penn Bank ("Penn Bank"). The loan was secured by a mortgage on the Property. See Proof of Claim No. 28 (Proof of Claim of Penn Bank and Exhibits and Declaration submitted therewith).[4]

---

statement. The Court accepts Debtor's statement that "there is nothing [in this case] for me" as an admission made in a rare moment of candor prior to his understanding its significance, and does not accept his attempted retraction.

[4] A hearing on the Debtor's objection to the claim of Penn Bank was held immediately prior to the hearing on the Motion. At the hearing on the Penn Bank claim, the Court heard testimony of the facts concerning the claim, subject to cross-examination of the Debtor. The testimony was consistent with the declaration and exhibits submitted with

In May, 2001, Penn Bank commenced a civil mortgage foreclosure action (the "Penn Bank Action") against the Debtor in the Superior Court of New Jersey, Cape May County. Penn Bank was successful in that action. The Debtor appealed that action to every level of the appellate courts in New Jersey, and sought a stay of the final order on an emergency motion to Justice Souter of the United States Supreme Court, which was denied. After the final appeal had run, Penn Bank scheduled a foreclosure for July, 2005.

Throughout the course of the Penn Bank Action, Debtor never notified Penn Bank that he had filed a bankruptcy petition in 2001 or that he was the subject of this bankruptcy proceeding. In September, 2003, while he was a debtor in this case, the Debtor filed a chapter 13 petition in a bankruptcy court in New Jersey in an effort to stop a foreclosure sale of the Property that had been scheduled as a result of the Penn Bank litigation. Because the Debtor was a debtor in this case (albeit undisclosed) he could not file a petition in his name. He filed the petition as "Peter Andresen, Trustee for Avalon Associates."[5] The petition was dismissed because a trustee cannot be an eligible debtor under chapter 13. During that chapter 13 proceeding, the Debtor did not disclose to the New Jersey bankruptcy court or Penn Bank that he was the subject of this bankruptcy case.

After Penn Bank scheduled the foreclosure sale of the Property in July, 2005, and in order to claim the protection of the automatic stay, the Debtor for the first time disclosed to Penn Bank that he was a debtor in a bankruptcy case, some four years after he filed his petition.

**b.    The Montgomery County Circuit Court Action**

---

the Penn Bank proof of claim. Under the unique circumstances of this case, and because this proceeding is a preliminary hearing, the Court will include the findings from the Penn Bank proof of claim hearing in the findings for the Motion.

[5] Avalaon Associates was named as a co-obligor on the promissory note.

During this bankruptcy case, the Trustee sought to sell a parcel of real estate located in Montgomery County, Maryland (the "Montgomery County Property"). The Montgomery County Property was property of the bankruptcy estate. The Trustee sought and obtained Bankruptcy Court approval of the sale. The Debtor objected to the sale and, in conjunction with the sale, proposed that the Montgomery County Property should be sold to a Mr. Barnes. In approving the sale, the Bankruptcy Court rejected Debtor's objections, and specifically rejected Debtor's claim that the Montgomery County Property should be sold to Mr. Barnes.

Undeterred, the Debtor filed an action against the Trustee in the Circuit Court for Montgomery County for specific performance (the "Montgomery County Action"). The Debtor sought an order of that court requiring the Trustee to sell the Montgomery County Property to Mr. Barnes, in complete contravention of the ruling of this Court. The Montgomery County Action was dismissed because the Bankruptcy Court had exclusive jurisdiction over the Trustee and property of the estate. The Debtor then filed appeals to the Court of Special Appeals of Maryland, the Court of Appeals of Maryland, and "I [he] think[s]" to the United States Supreme Court.

c.      **Actions with Respect to the Property**

The recent filing of the Lis Pendens is part of an ongoing effort of the Debtor to disrupt the Trustee's administration of the Property. The president of the title company retained by the prospective buyer of the Property informed the buyer that she could not obtain title insurance from any of the three title insurance underwriters she had contacted solely because of the Debtor's actions:

> … they all stated the obvious risk is Mr. Peter Andresen. His continued history of lawsuits, complaints, lis pendens and legal battles during the past thirty years of his possession of said

> property only reinforces the idea that he will not go away, even though the bankruptcy court has ordered the sale of the property.

Exhibit 4.[6]

### d. Apparent False Schedules, Ongoing Delay and General Gamesmanship

Mr. Rosen has been a chapter 7 trustee for 22 years and the Trustee of this case for three and one-half years. Throughout this case, the Debtor has, at every single turn, attempted to prevent Mr. Rosen from exercising his duties as the Chapter 7 Trustee. Mr. Rosen believes that nothing short of a court order and the risk of contempt will stop the Debtor from taking steps to interfere with the sale of the Property.

The Debtor is a disbarred attorney. When asked by the Court the reason for his disbarment, the Debtor stated that he was convicted in 1973 of misappropriation of funds in connection with his real estate practice.[7]

A debtor in a bankruptcy case is required to file schedules, under penalty of perjury, listing all assets in which he or she has an interest and all liabilities and creditors. In this case, the Debtor left out of his schedules assets in which he held an interest. For example, on his original schedules filed in the bankruptcy case under penalty of perjury, the Debtor did not disclose the Property, his alleged interest in Avalon Associates or the debt against the Property held by Penn Bank.[8] Docket No. 6. He failed to list Penn Bank as a creditor on his schedules or on the creditor matrix even though he had signed a promissory note in the amount of $250,000 in favor of Penn Bank in February, 1999. The Debtor failed to identify the Penn Bank Action on

---

[6] Exhibit 4 was admitted over the Debtor's objection on relevance grounds.

[7] The Debtor disclosed his conviction in response to the Court's questions. It was not offered to impeach the Debtor under Fed. R. Evid 609. Accordingly, the Court does not need to make a finding that, under the circumstances of this case and "in the interests of justice, the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Id. at 609(b).

[8] The Trustee testified that the Debtor failed to list assets on the schedules of assets that he filed in the case. After the conclusion of the hearing, the Court reviewed the schedules filed by the Debtor. The Court takes judicial notice of the schedules filed by the Debtor in this case.

his Statement of Financial Affairs as a "suit .. to which the debtor is … a party" even though he had been named a party in the Penn Bank action in May, 2001. Docket No. 5. By order dated June 19, 2002, this Court ordered the Debtor to file "complete and accurate Schedules of Assets and Liabilities and Statement of Financial Affairs." Docket No. 29. In his amended schedules, the Debtor again failed to list the Property, an interest in Avalon Associates or the debt to Penn Bank. Docket No. 26. The Debtor filed an amended Statement of Financial Affairs on January 6, 2003, and again failed to identify that he was a party to the Penn Bank Action. Docket No. 73. The Debtor filed amended schedules and an amended Statement of Financial Affairs again on May 7, 2004, and again failed to disclose the claim of Penn Bank, his interest in the Property or Avalon Associates or the Penn Bank Action. Docket Nos. 221 and 222.

Previously in this bankruptcy case, after conducting a series of hearings over six days, the Honorable Nancy V. Alquist, then presiding, found that "the Debtor is not credible and is schooled in obfuscation and delay." Docket No. 300 at p. 20.

The Debtor recently accused the Court of "obviously" participating in "illegal and *ex parte* communications" with the Trustee without a reasonable basis and without making an inquiry reasonable under the circumstances. See Fed. R. Bankr. P. 9011(b). After the Court issued its bench ruling on the Sale Motion, the Court did not enter the Sale Order until October 6, 2006. The Debtor alleged that the Court and the Trustee engaged in illegal *ex parte* communications between the date the Court issued the bench ruling and the date the Court entered the Sale Order. The Debtor alleges these *ex parte* communications occurred to allow the Trustee to insert in the Sale Order language not mentioned by the Court at the hearing. See Docket No. 349 at ¶ 6. At the hearing on the Motion, the Debtor stated that he made this allegation based on the fact that the Sale Order contained an explicit reference that the sale of the

Property would be free and clear of all liens and interests, and it included the phrase "(including lis pendens)." Docket No. 345 at p. 3. The Debtor claims that since he filed the Lis Pendens after the September 25, 2006, hearing on the Sale Motion, the Court could have included the phrase "(including lis pendens)" in the Sale Order only as a result of participating in *ex parte* communications with the Trustee. In fact, however, the Trustee had included the phrase "(including lis pendens)" in the proposed order initially filed by the Trustee with the Sale Motion on September 1, 2006. See Proposed Order to Docket No. 336 at p. 3. Accordingly, the Debtor had no reasonable basis for making his allegation.

The Debtor has overstated the effect of his personal disability in order to suit his litigation strategy. Several times, and as recently as Docket No. 349, filed on October 16, 2006, the Debtor has stated that he is legally blind and requires that an attorney must be appointed for him to proceed. He contends that these proceedings violate the Americans with Disabilities Act and his civil rights and has requested that hearings should be continued for that reason. However, the Debtor admitted that he drove to the courthouse for the hearing on the Motion and has a driver's license. The Debtor moves freely throughout the courtroom, including walking without assistance to the counsel table, from the table to the podium, from the podium to the witness stand and back. The Debtor repeatedly reads from documents in court, albeit slowly and with the help of a magnifying glass. While the Court does not dispute that the Debtor has limited vision, his vision has not prevented him from participating in these proceedings.

## CONCLUSIONS OF LAW

Preliminary injunctions are governed by Federal Rule of Civil Procedure 65, made applicable in bankruptcy proceedings by Bankruptcy Rule 7065. In <u>Blackwelder Furniture v. Seilig Mfg. Co</u>., 550 F.2d 189 (4th Cir. 1977), the Court of Appeals for the Fourth Circuit

11

"clarified that a hardship balancing test applies to determine the granting or denial of a preliminary injunction." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991).  When granting an injunction, a Court must consider the**:**

>(1) likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
>(2) likelihood of harm to the defendant if the requested relief is granted,
>(3) likelihood that the plaintiff will succeed on the merits, and
>(4) public interest.

Id. *quoting* L.J. by and through Darr v. Massinga, 838 F.2d 118 (4th Cir. 1988), *cert. denied*, 488 U.S. 1018, 102 L. Ed. 2d 805, 109 S. Ct. 816 (1989). The most important inquiry is the irreparable harm to the plaintiff weighed against the harm to the defendant if the injunction is not granted. Id.  If, after undertaking this inquiry, the balance "tips decidedly" in favor of the plaintiff, a preliminary injunction will be granted if "the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation."  Id. *quoting* Blackwelder, 550 F.2d at 195. "As the balance tips away from the plaintiff, a stronger showing on the merits is required."  Id.

In this case, the Court has no difficulty concluding that (1) the Debtor will not be harmed by an injunction; (2) substantial prejudice will befall the Trustee and the estate if an injunction is not issued; (3) the Trustee has made an extremely strong showing that he will succeed on the merits of his claim; and (4) public policy heavily favors the grant of an injunction.

**1.      The Bankruptcy Estate Will Be Irreparably Harmed Without an Injunction**.

The Debtor's willful actions, designed to frustrate the bankruptcy process, substantially harm the estate in a number of ways.  First, as a result of the Debtor's filing of the Lis Pendens, the prospective buyer of the Property have been unable to obtain title insurance for the Property.

12

The consequence is that the buyer has expressed a willingness to go forward with the sale only at a substantially reduced price. If this is allowed to occur, the Trustee will be required to liquidate property of the estate at less than its fair market value strictly as a result of the Debtor's actions. The creditors of this estate would be substantially harmed.

Further, the Trustee apparently will have no recourse against the Debtor for his actions. The Debtor has made a recent filing in this case stating that he is indigent. Docket No. 339 at ¶ 12. Accordingly, the difference in value between the proposed sale price for the Property and the price at which the Property would be sold without Court intervention may be lost by the estate forever.

Second, the Debtor's actions require the Trustee to expend estate resources needlessly. Indeed, the Court concludes that it is an objective of the Debtor, knowing that "there is nothing [in this case] for [him]," to force the Trustee to waste estate resources on his frivolous and willful actions. Because the estate is insolvent (i.e., creditors will not be paid in full and no distribution will be made to the Debtor), the wasted estate resources incurred while the Trustee chases the Debtor's proverbial wild geese causes irreparable harm to creditors.

**2.      No Harm to Debtor if an Injunction Is Issued**.

An additional Blackwelder factor to consider in determining whether to issue an injunction, is the harm to the defendant if the injunction is issued. In this case, the Court concludes that the Debtor will not be harmed from an injunction because (1) the Debtor has no hope of recovery from this bankruptcy estate and (2) the Debtor has failed to articulate any basis upon which a court could find that he holds a personal interest (i.e., one that is not property of the estate) in the Property.

The findings upon which the Court makes this conclusion are set forth in Section 3 of this opinion's Findings of Fact section. With respect to the finding that the Debtor will not receive any distribution from this estate, the Trustee testified that under "no scenario" will the Debtor receive a distribution. The Trustee has administered this case for more than three years and has a solid understanding of the assets available for distribution and the claims that will be required to be paid before any distribution can be made to the Debtor.[9] The Debtor himself conceded this point, stating that "There is nothing [in this case] for me, and probably nothing for the unsecured creditors."

In addition, with respect to the Property itself, the Debtor has failed to articulate any basis upon which a court could conclude that he has any personal interest that is not property of the estate. This Court has previously determined that the Property is property of the estate. See Findings of Fact, Section 3. That finding is the law of the case, and the Debtor's appeal of that finding has been dismissed. Id. Even if the Debtor is successful in his appeal to the United States Court of Appeal for the Fourth Circuit on that issue, however, he would have no interest in the Property that is not property of the estate. The Debtor contends in his appeal that the Property is owned by Avalon Associates, in which he has a small ownership interest. Accordingly, even if he were successful on appeal, the Debtor's alleged ownership interest in Avalon Associates would be property of the estate, subject to administration of the Trustee. Therefore, in no event has the Debtor articulated any basis upon which a court could find that the Debtor has a direct or indirect interest in the Property that is not property of the estate. Accordingly, an injunction

---

[9] In a chapter 7 case, after secured claims and administrative claims are paid in full, the trustee must pay in full with interest all priority claims, unsecured claims and late filed claims before a debtor could receive any distribution. See 11 U.S.C.§ 726(a)(1)-(6).

14

preventing the Debtor from interfering with the sale of the Property will cause the Debtor no harm.

**3.     The Trustee Has Made a Strong Showing of Likelihood of Success on the Merits**.

The Trustee has a strong likelihood of success on the merits. While an injunction prohibiting the Debtor from filing any documents affecting the sale of the Property sounds extraordinary, such relief previously has been employed by the Bankruptcy Court to protect the integrity of the bankruptcy sale process and the administration of bankruptcy cases.

An instructive case is <u>Allnutt v. Associates Leasing (In re Allnutt)</u>, 220 B.R. 871 (Bankr. D. Md. 1998). In <u>Allnutt</u>, the Debtor obstructed the administration of the case by filing frivolous motions and appeals. After a trustee sold an asset of the estate in which the debtor claimed no interest, the debtor's wife filed a proceeding in state court challenging the authority of the seller, his agents and the purchaser, to receive title on the basis that she owned the asset with the debtor as tenants by the entirety. After granting removal of the proceeding to the Bankruptcy Court, the court in <u>Allnutt</u> granted a permanent injunction enjoining the debtor, his insiders, heirs, assigns and agents, from filing suits and/or instigating the filing of suits in state or federal courts attacking sales of estate property or seeking damages from the purchasers of said property. The Court stated:

> The bankruptcy court has the powers of a court of equity… Section 105(a) of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Id. During the pendency of a Chapter 11 proceeding, and in aid of its jurisdiction, the bankruptcy court having been clothed with the exclusive jurisdiction to deal with property of a Chapter 11 estate, has the inherent power to enjoin debtors, insiders and their agents, including attorneys, from attacking sales of estate property in State courts, to prevent a debtor from regaining title to estate property by circumventing and negating the bankruptcy process, to enforce its valid orders, and to prevent the debtor and the debtor's agents from

> injuring third parties by misconduct which is determined to be both fraudulent and vexatious.

Allnutt, 220 B.R. at 890. The Court went on to state:

> The plaintiff's complaint exhibits a blatant disregard for the jurisdiction and authority of the federal courts, including the U.S. bankruptcy court, in which her husband, the debtor, voluntarily sought relief from debt. Instead of pursuing remedies provided by the Bankruptcy Code to protect her alleged interests in the JFC assets, the plaintiff filed a suit in state court without leave of this Court. The bankruptcy court is clothed with the authority to stop such antics in the exercise of its jurisdiction to liquidate property of the estate and to bring the administration of the bankruptcy case to a proper conclusion.
>
> This is the second frivolous lawsuit brought by the debtor's spouse, an insider, in which innocent parties have been haled into court to respond to groundless claims. In advancing the discredited tenancy-by-the-entireties theory for the second time and attempting to side-step the effects of a sale approved by this Court on an inapplicable theory of law, the plaintiff and her attorney have attacked the jurisdiction and authority of this Court. Such an attack is an affront to the dignity of the judicial system, in bad faith, vexatious and wanton.
>
> The instant complaint was filed in the state court in bad faith and without substantial justification, for the improper purposes of unreasonably delaying the administration of the Chapter 11 case, to frustrate the jurisdiction of the bankruptcy court by preventing the orderly liquidation of the debtor's estate, overturn decisions of the U.S. bankruptcy court and the U.S. district court, and harass and damage innocent parties whose only offense was to purchase estate assets from the trustee.

Id at 894.

The facts at hand closely resemble those presented in Allnutt. In Allnutt, the debtor, through his wife, attempted to attack collaterally a bankruptcy court-approved sale of estate property by filing an action in state court. Likewise, in the instant case it is clear that the Debtor

has pursued similar avenues to forestall and frustrate the Trustee's attempt to liquidate the estate and provide an expeditious distribution to creditors.

As one example of the Debtor's actions, in earlier proceedings in this case, after the Trustee obtained approval to sell the Montgomery County Property, the Debtor initiated the Montgomery County Action against the Trustee. This Court has no difficulty in concluding that in filing and prosecuting the Montgomery County Action, the Debtor violated the automatic stay of 11 U.S.C. §362(a)(3). Section 362(a)(3) prevents any party from taking any act to "exercise control over property of the estate." By suing the Trustee in state court and seeking an order requiring him to sell estate property contrary to this Court's order, the Debtor was seeking to exercise control over the Montgomery County Property.

Further, after the Montgomery County Action was dismissed by the Circuit Court for Montgomery County, the Debtor prosecuted a frivolous appeal of that dismissal to the Maryland Court of Special Appeals, the Maryland Court of Appeals, and (he thinks) to the United States Supreme Court. The Debtor's actions forced the Trustee to expend estate resources in defending against these frivolous filings.

The filing of the Lis Pendens is yet another attempt by the Debtor to hinder the timely administration of the estate. The Debtor believed that he would not be able to obtain a stay of the Sale Order and filed the Lis Pendens with the intention of upsetting the sale. The filing of the Lis Pendens has had it intended effect. As stated by the court in <u>Allnutt</u>, "The bankruptcy court is clothed with the authority to stop such antics in the exercise of its jurisdiction to liquidate property of the estate and to bring the administration of the bankruptcy case to a proper conclusion." <u>Allnutt,</u> 220 B.R. at 894.

The filing of the Montgomery County Action and the Lis Pendens are not the only examples of the Debtor abusing the bankruptcy process and interfering inappropriately with the administration of this case.  The Findings of Fact contain numerous examples of actions taken by the Debtor to frustrate the bankruptcy process.  Those examples include:

- The Debtor failed to disclose on his schedules the loan from Penn Bank that he obtained in 1999, and has not disclosed on his schedules his interest in the Property or his alleged interest in Avalon Associates even though he has three times filed amended schedules under the penalty of perjury.

- Although Penn Bank sued the Debtor prior to the filing of the petition in this case seeking a judgment for foreclosure on the Property, the Debtor failed to inform Penn Bank of the bankruptcy case in the ensuing four years of that litigation, and only informed the bank of the bankruptcy case to halt the scheduled sale after the bank was successful in obtaining a judgment to proceed with the foreclosure sale.

- While he was a debtor in this case, the Debtor filed a chapter 13 petition in a bankruptcy court in New Jersey in an effort to stop the Penn Bank litigation.  Because the debtor was a debtor in this case (albeit undisclosed) he could not file a petition strictly in his name.  Instead, he filed the petition as "Peter Andresen, Trustee for Avalon Associates."  During that chapter 13 proceedings, the Debtor did not disclose to the New Jersey bankruptcy court or Penn Bank that he was the subject of this bankruptcy case.

- Throughout this case, the Debtor has, at every single turn, attempted to prevent Mr. Rosen from exercising his duties as the chapter 7 trustee.  Mr. Rosen believes that nothing short of a court order and the risk of contempt will stop the Debtor from taking steps to interfere with the sale of the Property.

The Debtor "does not know" whether he will take any further actions to disrupt the sale of the Property. Given his actions in this case and his testimony that he does not know whether he will take any further actions to disrupt the sale, the Court concludes that there is a substantial likelihood that the Debtor will continue to take action to frustrate the administration of this estate generally and the sale of the Property in particular.

4. **There is a Strong Public Interest in Protecting the Integrity of the Bankruptcy Process.**

The public interest in maintaining the integrity of the bankruptcy sale process strongly favors the grant of an injunction in this case. As the record at the hearing on the Sale Motion established, the Trustee has expended substantial efforts to market and sell the Property. He has presented a contract with a good faith purchaser for an amount that this Court has determined is the fair value for the Property obtained after it was fully and properly marketed for sale.

Once the court entered the Sale Order, the Debtor had a number of potential remedies available to him within the bankruptcy process if, as appears, he disagreed with this Court's decision. As examples, he could have sought a stay of the Sale Order in this Court (which he has not done) and he could have sought a stay of the Sale Order in the United States District Court for the District of Maryland (which apparently he has not done).

The Debtor, however, testified that he did not believe he would be able to obtain a stay. Rather than following the proper procedures within the bankruptcy process to seek a stay of the Sale Order, the Debtor filed the Lis Pendens with the intention of upsetting the sale. The Debtor thereby obtained through his extra-judicial efforts that which he believed he could not obtain on the merits of his claim – a stay of the sale. His action had the intended effect – the Trustee has been unable to close the approved sale of the Property because of the filing of the Lis Pendens.

## **CONCLUSION**

For the foregoing reasons the Court will enter an order granting the preliminary injunction.

Copies To:

Debtor-Pro Se
Trustee- Gary Rosen
First Penn Bank
PSB Bancorp, Inc.
Bradley Calnan
Laura Calnan
Cape May County Sheriff Department
John F. Callinan, Sheriff
Office of the U.S. Trustee

**END OF ORDER**